UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

COALITION TO DEFEND AFFIRMATIVE ACTION,
INTEGRATION AND IMMIGRATION RIGHTS AND
FIGHT FOR EQUALITY BY ANY MEANS NECESSARY
(BAMN), UNITED FOR EQUALITY AND AFFIRMATIVE
ACTION LEGAL DEFENSE FUND, RAINBOW PUSH
COALITION, CALVIN JEVON COCHRAN, LASHELLE
BENJAMIN, BEAUTIE MITCHELL, DENESHA RICHEY,
STASIA BROWN, MICHAEL GIBSON, CHRISTOPHER
SUTTON, LAQUAY JOHNSON, TURQOISE WISE-
KING, BRANDON FLANNIGAN, JOSIE HUMAN,
ISSAMAR CAMACHO, KAHLEIF HENRY,
SHANAE TATUM, MARICRUZ LOPEZ,
ALEJANDRA CRUZ, ADARENE HOAG, CANDICE
YOUNG, TRISTAN TAYLOR, WILLIAMS FRAZIER,
JERELL ERVES, MATTHEW GRIFFITH,
LACRISSA BEVERLY, D'SHAWNM
FEATHERSTONE, DANIELLE NELSON,
JULIUS CARTER, KEVIN SMITH, KYLE
SMITH, PARIS BUTLER, TOUISSANT KING,
AIANA SCOTT, ALLEN VONOU, RANDIAH
GREEN, BRITTANY JONES, COURTNEY DRAKE,
DANTE DIXON, JOSEPH HENRY REED,
AFSCME LOCAL 207, AFSCME LOCAL 214,
AFSCME LOCAL 312, AFSCME LOCAL 836,
AFSCME LOCAL 1642, AFSCME LOCAL 2920,
and the DEFEND AFFIRMATIVE ACTION PARTY,

Case No. 06-15024
Hon. David M. Lawson

**OPINION AND ORDER GRANTING
MOTIONS TO EXPEDITE,
GRANTING IN PART AND
DENYING IN PART
MOTIONS TO INTERVENE, AND
STRIKING MOTION TO DISMISS**

Plaintiffs,

v.

JENNIFER GRANHOLM, in her official capacity as Governor
of the State of Michigan, the REGENTS OF THE UNIVERSITY
OF MICHIGAN, the BOARD OF TRUSTEES OF MICHIGAN
STATE UNIVERSITY, the BOARD OF GOVERNORS OF WAYNE
STATE UNIVERSITY, and the TRUSTEES of any other public
college or university, community college, or school district,

Defendants,

and

REGENTS OF THE UNIVERSITY OF MICHIGAN, THE BOARD
OF TRUSTEES OF MICHIGAN STATE UNIVERSITY and the
BOARD OF GOVERNORS OF WAYNE STATE UNIVERSITY,

                Cross-Plaintiffs,

v.

JENNIFER GRANHOLM, in her official capacity as Governor
of the State of Michigan,

                Cross-Defendant.
_____/

## OPINION AND ORDER GRANTING MOTIONS TO EXPEDITE, GRANTING MOTION TO INTERVENE BY ERIC RUSSELL, DENYING REMAINING MOTIONS TO INTERVENE, AND STRIKING MOTION TO DISMISS FILED BY THE AMERICAN CIVIL RIGHTS FOUNDATION AND THE MICHIGAN CIVIL RIGHTS INITIATIVE COMMITTEE

Before the Court are three motions by various parties to intervene in this action either as plaintiffs or defendants. This case was commenced on November 8, 2006 by several plaintiffs as a challenge to a recently-approved state constitutional amendment, Proposal 06-2, now known as Article 1, section 26 of the Michigan Constitution of 1963, that purports to bar the use of race, sex, color, ethnicity, or national origin to promote diversity in public hiring, contracting, and university admission decisions. The plaintiffs allege that the amendment violates the United States Constitution. The Court has reviewed the submissions of the parties and finds that the relevant law and facts have been set forth in the motion papers and that oral argument will not aid in the disposition of the motion. Further, the parties have sought expedited treatment of their motions, and oral argument is impractical in light of that request. Accordingly, it is **ORDERED** that the motion be decided on the papers submitted. *See* E.D. Mich. LR 7.1(e)(2). The Court finds that the interests of the proposed intervenors, save those of Eric Russell, are represented adequately by the parties

presently before the Court, allowing intervention would interfere with the expeditious disposition of the present action, and therefore intervention is not in the interest of justice. Proposed intervenor Russell, however, has identified an individual interest that may not be represented adequately by the institutional parties now before the Court, and therefore his motion to intervene will be granted.

I.

A.

Although the lawsuit's filing the day after the election received some press coverage, there was little activity in the case for over a month after it was filed. Then on December 11, 2006, the three University defendants filed a cross-claim against co-defendant Governor Jennifer Granholm seeking declaratory relief, together with a motion for a preliminary injunction to delay the implementation of the state constitutional amendment until the current enrollment season is completed, and a motion for expedited consideration. The Court ordered responses to the motion for injunction by December 18, 2006. Thereafter, the Michigan Attorney General sought permission to intervene as a defendant in the matter, together with a motion to expedite consideration of the motion to intervene. The parties to the case either took no position or consented to the relief, and the Court granted the motion to intervene on December 14, 2006.

On December 18, 2006, the Court received a stipulation [dkt #26] from all parties to the case, including intervening defendant Michigan Attorney General, consenting to the temporary injunctive relief sought by the cross-claimants (the University defendants), and agreeing to dismiss with prejudice the portion of the cross-claim seeking a temporary injunction, and the balance of the cross-claim without prejudice. The Court approved the stipulation and entered an appropriate order on December 19, 2006.

Also on December 14, 2006, a motion to intervene was filed by the American Civil Rights Foundation and the Michigan Civil Rights Initiative Committee. The American Civil Rights Foundation appears to be a California-based organization and represents that it is a coalition of individuals who are opposed to the use of racial, gender, and ethnic factors by government in making decisions about letting contracts, education, and employment. The Michigan Civil Rights Initiative Committee is the ballot question committee that sponsored the challenged ballot proposal. These two groups seek to intervene as defendants in the action. Along with their motion to intervene, they filed a motion to dismiss the complaint, but the plaintiffs filed an amended complaint on December 17, 2006. They filed no motion for immediate consideration at that time.

On December 18, 2006, a motion to intervene as defendants was filed by a group called Toward a Fair Michigan, and an individual named Eric Russell. The mission of Toward a Fair Michigan, according to the affidavit of its chairperson, is to "promot[e] and foster[] balanced debate" on the ballot proposal, and "insure that the deliberate will of the people" is enforced. Aff. of William Allen at ¶ 1. Eric Russell states that he is a Michigan citizen who intends to apply to law school at the University of Michigan next year.

Also on December 18, 2006, the City of Lansing filed a motion to intervene as plaintiff in the action. The City seeks a delay in the effective date of the constitutional amendment as to it because, it contends, it must work within the framework of certain municipal ordinances that mandate the use of racial and gender preferences in employment and letting contracts. The next day, Lansing filed a supplemental emergency motion to intervene in which it asks that it be allowed the benefit of the stipulation reached by the parties to the case with respect to the delay of the effective date of the constitutional amendment as to the University defendants' admission programs.

The American Civil Rights Foundation and Toward a Fair Michigan filed their motions to expedite the hearings on their intervention motions on December 19, 2006. They both make reference to the (now dismissed) cross-claim filed by the University defendants and the "additional filings" in the case as grounds for expedited consideration.

B.

The main thrust of the motions to intervene filed by the American Civil Rights Foundation, the Michigan Civil Rights Initiative Committee, Toward a Fair Michigan, and Eric Russell is that some of the named defendants have evidenced through public statements their opposition to Proposal 2 or have otherwise demonstrated they will not vigorously defend its constitutionality. These contentions are focused on the Michigan Governor and the University defendants, since the motions were filed presumably without the benefit of learning that the Michigan Attorney General, who publicly supported the proposal during the election, was allowed to intervene in the case. The City of Lansing seeks intervention as a plaintiff based on its "substantial interest in preserving its legislatively mandated purchasing and hiring ordinances and civil rights policies and procedures." Br. in Supp. of Mot. to Intervene at 7. Lansing's main goal is obtaining additional time to comply with the amendment's provisions.

The American Civil Rights Foundation and the Michigan Civil Rights Initiative Committee argue that their request is timely even though it comes after the cross-claim by the University defendants was resolved and dismissed, they have a substantial interest in the subject matter of the lawsuit because of their activity in promoting passage of the proposal, their interest in ending affirmative action would be impaired if Proposal 2 were invalidated or narrowly interpreted, and the

other parties could not represent their interests because those interests are inconsistent with the defendants' pre-election pronouncements about the ballot proposal.

The University defendants and the Governor respond with the arguments that the intervention request is untimely because the cross-claim has been resolved and the proposed intervenors failed to ask for expedited treatment of their motion despite the time-sensitive nature of the cross-claim. They also argue that the proposed intervenors failed to demonstrate a substantial interest in the litigation that is different than any voter who supported the proposal. They next contend that with the entree of the Michigan Attorney General into the case, a full range of arguments addressing all the relevant issues will be presented to the Court, particularly in light of the attorney general's pledge to vigorously defend the amendment. Finally, the Governor asserts that the Court should view with skepticism the Michigan Civil Rights Initiative Committee's request to intervene because of the misconduct its members were found to have committed by the deception of Michigan citizens in obtaining the requisite number of signatures in support of Proposal 2 as described in *Operation King's Dream v. Connerly*, 2006 WL 2514115 (E.D. Mich. 2006). The Michigan Attorney General did not respond to the intervention motion by the American Civil Rights Foundation and the Michigan Civil Rights Initiative Committee.

In their motion to intervene, Toward a Fair Michigan and Eric Russell likewise contend that their request is timely. Russell says that he has an interest in the subject matter of the litigation because he is a white male seeking admission to the University of Michigan Law School next fall. The interest of Toward a Fair Michigan is less concrete; it asserts that it did not take a position concerning whether Proposal 2 should be passed, and its objective was to educate the public and see that the will of the electorate, whatever its decision, was implemented. Russell also argues that his

interest in achieving admission to the University of Michigan would be impaired if Proposal 2 is struck down or narrowly construed, and Toward a Fair Michigan argues that its interests will be impaired if the will of the people is not upheld. These proposed intervenors also contend that their interests will not be represented adequately by the present parties based on the Governor's pre-election statements in opposition to the proposal.

The University defendants and the Governor have repeated their responses in opposition to the intervention motions filed by Toward a Fair Michigan and Russell. The Michigan Attorney General did not respond to the intervention motion filed by these proposed intervenors.

The City of Lansing argues that its motion for intervention is timely because it filed the present motion promptly after discovery of its interest in the litigation. In identifying its interest in the subject matter of the present lawsuit, Lansing asserts that like the plaintiffs who seek to overturn Proposal 2, Lansing "has a similar interest not necessarily in overturning Proposal 2, but at least in delaying its implementation." Br. in Supp. of Mot. to Intervene at 7. Lansing also contends that disposition of the case may, as a practical matter, impair Lansing's interest because an adverse decision would defeat Lansing's efforts to achieve race and gender equality through local legislation. Finally, Lansing asserts that its interests are not adequately represented because none of the current parties will represent the interests and concerns of local governments effected by Proposal 2.

The Michigan Attorney General opposes Lansing's request to intervene primarily on the ground that Lansing has failed to establish that its interests will be inadequately represented by the current parties to the case. The attorney general insists that the movant has the burden of establishing inadequacy of representation, and this burden includes overcoming the presumption of adequacy of representation when the proposed intervenor and a party to the suit share the same

ultimate objective. The University defendants and the Governor did not respond to the intervention motion filed by the City of Lansing.

All movants also have sought permissive intervention as an alternative form of relief.

II.

Motions to intervene are governed by Federal Rule of Civil Procedure 24. Rule 24 allows two types of intervention: intervention by right and permissive intervention. With respect to both types of intervention, the Sixth Circuit has held that although "Rule 24 should be 'broadly construed in favor of potential intervenors,'" the court has cautioned that "this does not mean that Rule 24 poses no barrier to intervention at all." *Stupak-Thrall v. Glickman*, 226 F.3d 467, 472 (6th Cir. 2000) (quoting *Purnell v. Akron*, 925 F.2d 941, 950 (6th Cir. 1991)). The court has affirmed the denial of motions to intervene by right and permissively for a variety of reasons. *See, e.g., Jordan v. Michigan Conf. of Teamsters Welfare Fund,* 207 F.3d 854, 863 (6th Cir. 2000) (affirming denial of a motion to intervene as of right, because the motion was untimely and the proposed intervenor's interests were adequately represented); *Bradley v. Milliken,* 828 F.2d 1186, 1194 (6th Cir. 1987) (affirming denial of motions to intervene permissively and as of right, in part because "the district court has already taken steps to protect the proposed intervenors' interests by inviting [their counsel] to appear as amicus curiae in the case").

A.

Rule 24(a), dealing with intervention of right, states:

Upon timely application anyone shall be permitted to intervene in an action . . . when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Fed. R. Civ. P. 24(a). "[T]o intervene as of right under Rule 24(a)(2), a proposed intervenor must establish the following four elements: (1) the motion to intervene is timely; (2) the proposed intervenor has a substantial legal interest in the subject matter of the case; (3) the proposed intervenor's ability to protect that interest may be impaired in the absence of intervention; and (4) the parties already before the court may not adequately represent the proposed intervenor's interest." *United States v. Michigan*, 424 F.3d 438, 443 (6th Cir. 2005). "Failure to meet [any] one of the [four] criteria will require that the motion to intervene be denied." *Grubbs v. Norris,* 870 F.2d 343, 345 (6th Cir. 1989).

The first element – timeliness – "should be evaluated in the context of all relevant circumstances." *Stupak-Thrall*, 226 F.3d at 472 (internal quotation marks omitted). A variety of factors are usually considered, including the developments in the case, the purpose for intervention, and how long the proposed intervenors knew of their interest in the property or transaction at issue before they sought permission to intervene. *Id.* at 473-74. In this case, the lawsuit challenges the implementation of a state constitutional amendment that was to go into effect on December 23, 2006. None of the parties save Russell has offered an explanation why they waited for over a month to join the suit. Russell's individual interest became apparent when the University defendants sought a delay in the effective date of the state constitutional amendment and reached an agreement to that effect with others in the lawsuit. Since Russell's own admission prospects may be affected by that agreement, it was sensible for him to seek intervention when that information came to light. The other proposed intervening defendants, however, have interests that are no different than any Michigan citizen who voted in favor of the ballot proposal, and there was no obstacle to their taking action shortly after the lawsuit was filed and well in advance of the effective date of the amendment.

-9-

Similarly, the City of Lansing no doubt was aware of the pending litigation and the effective date of the amendment, but it chose to wait for over a month before seeking an entree into the case. The Court believes that the citizens of the State are best served by a prompt resolution of the issues framed by the pleadings as to the constitutionality of their new state constitutional provision, and the delay in reaching that objective occasioned by the tardy requests to intervene, in light of all the circumstances of the case, renders the requests (save Russell's) untimely.

The second element – that the proposed intervenor proves a substantial legal interest in the property or transaction involved in the lawsuit – was addressed by the Sixth Circuit in *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240 (6th Cir. 1997), which the court denominated a "close case." There, the court of appeals wrote:

> This circuit has opted for a rather expansive notion of the interest sufficient to invoke intervention of right. *See Purnell*, 925 F.2d at 948; *Bradley v. Milliken*, 828 F.2d 1186, 1192 (6th Cir. 1987) ("[T]his court has acknowledged that 'interest' is to be construed liberally."). We have, for example, noted that an intervenor need not have the same standing necessary to initiate a lawsuit, *Purnell*, 925 F.2d at 948, and cited with approval decisions of other courts "reject[ing] the notion that Rule 24(a)(2) requires a specific legal or equitable interest." *Id.* . . . . The inquiry into the substantiality of the claimed interest is necessarily fact-specific.

*Id.* at 1245. The court in *Miller* held that the Michigan Chamber of Commerce had a sufficient legal interest in a suit challenging an amendment to Michigan's Campaign Finance Act not only due to its role in the political process that resulted in the adoption of the disputed amendment, but also by the fact that it was also specifically regulated by the legislation. *See id.* at 1247. Further guidance is provided by *Grutter v. Bollinger*, 188 F.3d 394 (6th Cir. 1999), where the court held that pro-affirmative action groups and minority applicants to the University of Michigan's undergraduate and law programs had a sufficient interest to justify intervention in a suit challenging the university's

-10-

race-conscious admission programs because, if the lawsuit was successful and the affirmative-action programs eliminated, they would have a lesser chance of gaining admission. *See id.* at 400.

In this case, the American Civil Rights Foundation and the Michigan Civil Rights Initiative Committee argue that they were integrally involved in the drafting and promotion of Proposal 2. It would not be unreasonable to posit that the amendment would not have reached the ballot without their efforts. Therefore, although under *Miller*, the question of whether these organizations have a sufficient interest in the outcome of this litigation is perhaps a close one. However, involvement in the pre-election activity does not automatically establish a substantial interest in this litigation, as these proposed intervenors contend. *Miller* does not stand for the proposition that an organization that supports legislation *ipso facto* has a substantial legal interest in the outcome of a suit challenging such legislation. Rather, the court found a substantial interest where the Chamber of Commerce in that case was not a mere supporter of the legislation; it was also directly "regulated by at least three of the four statutory provisions challenged by the plaintiffs." 103 F.3d at 1247. There is no suggestion that either of these organizations will be affected by rulings concerning the amendment at issue in this case. They have not asserted that whatever ruling this Court hands down will have an impact on the vitality of the organizations, subject them to regulation, or expand or curtail their rights as organizations. They have not proved, therefore, that they have an "interest relating to the property or transaction which is the subject of the action." Fed. R. Civ. P. 24(a).

The interest of Toward a Fair Michigan is even more tenuous. It has represented that it took *no* pre-election position of whether the proposal should pass, but it only sponsored debates about the merits of the ballot initiative. It states that its present mission is to ensure that public officials carry out the will of the electorate and advise people of their rights under the new amendment.

-11-

Toward a Fair Michigan has not identified any interest in its brief that would be impacted by a ruling of the Court.

The City of Lansing primarily seeks a delay in the application of the constitutional amendment to itself. It has argued that it is subject to regulation by the new law, and its impact will materially affect the operations of the City in its hiring and contract-letting decisions. Lansing has established a substantial interest in the litigation under *Miller*.

Likewise, Eric Russell is situated similarly to the intervenors in *Grutter v. Bollinger*, in that if the present plaintiffs are successful in obtaining a ruling that the constitutional amendment is invalid, Russell's chances of gaining admission to the University of Michigan law school may be diminished. *See Grutter*, 188 F.3d at 400.

Proof of the third element – that the proposed intervenor's ability to protect its interest may be impaired in the absence of intervention – is not an onerous task. "'To satisfy this element of the intervention test, a would-be intervenor must show only that impairment of its substantial legal interest is possible if intervention is denied. This burden is minimal.'" *Grutter*, 188 F.3d at 399 (quoting *Miller*, 103 F.3d at 1247). Of course, the inability to protect one's interest posits the existence of an interest to begin with. The American Civil Rights Foundation, the Michigan Civil Rights Initiative Committee, and Toward a Fair Michigan have failed in that proof. Eric Russell and the City of Lansing have not.

The fourth element requires the proposed intervenor to prove the inadequacy of representation by others who are in the case, and it appears to be the most critical issue with respect to the present motions to intervene. In *Michigan*, the Sixth Circuit explained that

> [a]pplicants for intervention bear the burden of proving that they are inadequately represented by a party to the suit. *Meyer Goldberg, Inc. v. Goldberg*, 717 F.2d 290,

> 293 (6th Cir. 1983). This burden has been described as minimal because it need only be shown 'that there is a *potential* for inadequate representation.' *Grutter*, 188 F.3d at 400. Nevertheless, applicants for intervention must overcome the presumption of adequate representation that arises when they share the same ultimate objective as a party to the suit. *Bradley v. Milliken*, 828 F.2d 1186, 1192 (6th Cir. 1987).

*United States v. Michigan*, 424 F.3d at 443-44. In *Grutter*, the courts of appeals held that the burden of proof concerning inadequacy of representation remains the same when the existing party (the putative representative of the proposed intervenor's interests) is a governmental entity. *Grutter*, 188 F.3d at 400. To meet this burden, "[i]t may be enough to show that the existing party who purports to seek the same outcome may not make all of the prospective intervenor's arguments." *Ibid.* (internal quotation marks omitted).

The main argument by the proposed intervening defendants on the adequacy of representation is that the original parties to the lawsuit all had been opposed to the ballot proposal before the election. That argument certainly had some force before the Michigan Attorney General was allowed to intervene in the case. There is evidence showing that Governor Granholm made public statements calling for the rejection of Proposal 2 prior to election day and lamenting its subsequent passage. The University defendants plainly oppose Proposal 2 as evidenced by their cross-claim in this action contesting the constitutionality of the amendment and seeking the delay of its implementation. However, the Michigan Attorney General took a pre-election position in support of Proposal 2 and urged its passage. The Attorney General's office has taken pains to divide its sections representing the Governor and its own interests and has isolated the two divisions. For his own part, the assistant attorneys general assigned to represent the General's own interests have averred that the Michigan Attorney General will "ensure that the Court is presented with a full

range of arguments . . . so that a vigorous defense of the constitutionality of [Proposal 2] may be had." Mot. to Expedite Mot. to Intervene by Attorney General at ¶ 9.

The proposed intervening defendants have challenged the attorney general's ability to represent their interests by arguing that, no matter how well the attorney general may represent the electorate, it is doubtful that he will be able to represent the specific interests of the sponsors and drafters of Proposal 2. This argument is as imprecise as it sounds, but the theory essentially appears to be that the attorney general will not defend Proposal 2 with as much fervor as the proposed intervenors would. However, the "interest" of the proposed intervenors in seeing the constitutional amendment upheld is no different than the majority of Michigan citizens who voted for its passage. There is no proof in this record that the proposed intervenors or their lawyers would be more capable than the elected attorney general of mounting a defense to the amendment, or that their arguments would be more compelling or credible or better founded. Since the interests of proposed intervenors the American Civil Rights Foundation, the Michigan Civil Rights Initiative Committee, and Toward a Fair Michigan are precisely aligned with those of the Michigan Attorney General, and because there is little likelihood that their participation would shed any new light on the issues presented, they have not shown that the present parties, as they are now aligned, would be inadequate to advance their interests.

Similarly, the City of Lansing has not made a convincing argument that its interests are not well-represented. The named plaintiffs oppose Proposal 2, the Universities largely oppose Proposal 2, and Governor Granholm has publicly displayed her disagreement with the amendment. The current parties to the suit – private organizations, a variety of individuals, and labor unions – seem to be interested in the amendment's impact on education, employment, and public contracts. Under

these circumstances, the Court finds that Lansing's interests appear to be adequately represented.

The circumstances of Eric Russell are different. Russell is the only intervenor who has alleged an individual interest that may not be taken into account by the present parties. He has alleged a personal stake in seeing that his law school admission chances are not diminished by a narrow construction or invalidation of the amendment. His interest extends beyond those of the citizens and election groups that promoted or opposed the ballot proposal. He seeks the implementation of Proposal 2 *now*, while his application is being processed. The other parties do not represent that position. Russell, therefore, has established the fourth element for intervention by right.

The Court finds that none of the proposed intervenors except Eric Russell have made the proper showing to establish a right to intervene in this case under Rule 24(a).

B.

Rule 24 also sets out the standard for permissive intervention. It states:

> Upon timely application anyone may be permitted to intervene in an action . . . when an applicant's claim or defense and the main action have a question of law or fact in common. . . . In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

Fed. R. Civ. P. 24(b). An applicant for permissive intervention, therefore, must prove that the motion for intervention is timely, there is at least one common question of law or fact, and the balancing of undue delay, prejudice to the original parties, and any other relevant factors favors intervention. *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1248 (6th Cir. 1997).

The Court has found that the motions to intervene by the American Civil Rights Foundation, the Michigan Civil Rights Initiative Committee, Toward a Fair Michigan, and the City of Lansing are not timely. Moreover, it is paramount that the issues in this case are resolved promptly. Michigan's public institutions will serve its citizens best when they have a clear understanding of the requirements and limitations of the State's new constitutional amendment. That clear understanding will not be achieved until the conclusion of the judicial process. This Court has no delusion that its pronouncement will be the last word on the subject. History has confirmed that the district courts, in cases of this importance, are mere way stations on the judicial road to a final resolution by courts beyond. Nonetheless, the case must pass through this stage – and promptly – before the goal of finality can be realized.

Allowing additional parties into the lawsuit at this stage of the proceedings will inhibit, not promote, a prompt resolution by this Court. Additional parties no doubt could seek to file more claims, amend pleadings even further, and inject issues that may not lead directly to a resolution of the issues circumscribed by the present pleadings. The rules of civil procedure, including Rule 24(b), must be "construed and administered to secure the just, speedy, and inexpensive determination of every action." Fed. R. Civ. P. 1. After balancing the relevant factors, the Court determines that allowing discretionary intervention will not advance that objective.

### III.

The Court has found that proposed intervenor Eric Russell has established a right to intervene. The Court is not persuaded that the remaining proposed intervenors ought to intervene in the present action. One of the proposed intervenors has filed a motion to dismiss, which will be stricken because it was not filed by a proper party to the case.

Accordingly, it is **ORDERED** that the motions to expedite the motion to intervene by Eric Russell and Toward a Fair Michigan [dkt #43], the American Civil Rights Foundation and Michigan Civil Rights Initiative Committee [dkt #41], and the City of Lansing [dkt #38] are **GRANTED**.

It is further **ORDERED** that the motion to intervene by Eric Russell [dkt #27] is **GRANTED**.

It is further **ORDERED** that the motion to intervene by Toward a Fair Michigan [dkt #27] is **DENIED**.

It is further **ORDERED** that the motion to intervene by American Civil Rights Foundation and Michigan Civil Rights Initiative Committee [dkt # 16] is **DENIED**.

It is further **ORDERED** that the motion to intervene by City of Lansing [dkt # 31] is **DENIED**.

It is further **ORDERED** that the motion to dismiss by American Civil Rights Foundation and Michigan Civil Rights Initiative Committee [dkt # 21] is **STRICKEN**.

s/David M. Lawson  
DAVID M. LAWSON  
United States District Judge

Dated: December 27, 2006

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on December 27, 2006.

s/Felicia M. Moses  
FELICIA M. MOSES