UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


COALITION TO DEFEND AFFIRMATIVE ACTION,
INTEGRATION AND IMMIGRATION RIGHTS AND
FIGHT FOR EQUALITY BY ANY MEANS NECESSARY          Case No. 06-15024
(BAMN), UNITED FOR EQUALITY AND AFFIRMATIVE        Hon. David M. Lawson
ACTION LEGAL DEFENSE FUND, RAINBOW PUSH
COALITION, CALVIN JEVON COCHRAN, LASHELLE
BENJAMIN, BEAUTIE MITCHELL, DENESHA RICHEY,
STASIA BROWN, MICHAEL GIBSON, CHRISTOPHER
SUTTON, LAQUAY JOHNSON, TURQOISE WISE-
KING, BRANDON FLANNIGAN, JOSIE HYMAN,              **OPINION AND ORDER**
ISSAMAR CAMACHO, KAHLEIF HENRY,                    **ADJUDICATING CERTAIN**
SHANAE TATUM, MARICRUZ LOPEZ,                      **MOTIONS**
ALEJANDRA CRUZ, ADARENE HOAG, CANDICE
YOUNG, TRISTAN TAYLOR, WILLIAMS FRAZIER,
JERELL ERVES, MATTHEW GRIFFITH,
LACRISSA BEVERLY, D'SHAWNM
FEATHERSTONE, DANIELLE NELSON,
JULIUS CARTER, KEVIN SMITH, KYLE
SMITH, PARIS BUTLER, TOUISSANT KING,
AIANA SCOTT, ALLEN VONOU, RANDIAH
GREEN, BRITTANY JONES, COURTNEY DRAKE,
DANTE DIXON, JOSEPH HENRY REED,
AFSCME LOCAL 207, AFSCME LOCAL 214,
AFSCME LOCAL 312, AFSCME LOCAL 836,
AFSCME LOCAL 1642, AFSCME LOCAL 2920,
and the DEFEND AFFIRMATIVE ACTION PARTY,


                    Plaintiffs,


v.


THE REGENTS OF THE UNIVERSITY OF MICHIGAN,
the BOARD OF TRUSTEES OF MICHIGAN STATE
UNIVERSITY, the BOARD OF GOVERNORS OF WAYNE
STATE UNIVERSITY, the TRUSTEES of any other public
college or university, community college, or school district,
ATTORNEY GENERAL MICHAEL COX, and ERIC
RUSSELL,


                    Defendants,

-and-

CHASE CANTRELL, M.N., a minor child by Karen Nestor,
Mother and Next Friend, KAREN NESTOR, Mother and
Next Friend of M.N., a minor child, C.U., a minor child, by
Paula Uche, Mother and Next Friend, PAULA UCHE,
Mother and Next Friend to C.U., a minor child, JOSHUA
KAY, SHELDON JOHNSON, MATTHEW COUNTRYMAN,
M.R., a minor child, by Brenda Foster, Mother and Next Friend,
BRENDA FOSTER, Mother and Next Friend of M.R., a minor
child, BRYON MAXEY, RACHEL QUINN, KEVIN GAINES,
DANA CHRISTENSEN, T.J., a minor child, by Cathy Alfaro,
Guardian and Next Friend, CATHY ALFARO, Guardian and
Next Friend of T. J., a minor child, S. W., a minor child, by
Michael Weisberg, Father and Next Friend, MICHAEL
WEISBERG, Father and Next Friend of S. W., a minor child,
CASEY KASPER, SERGIO EDUARDO MUNOZ, ROSARIO
CEBALLO, KATHLEEN CANNING, EDWARD KIM, M.C.C. II,
a minor child, by Carolyn Carter, Mother and Next Friend,
CAROLYN CARTER, Mother and Next Friend of M.C.C., II,
a minor child, J.R., a minor child, by Matthew Robinson, Father and
Next Friend, MATTHEW ROBINSON, Father and Next Friend
of J.R., a minor child,

CONSOLIDATED CASES

Case No. 06-15637
Hon. David M. Lawson

Plaintiffs,

v.

ATTORNEY GENERAL MICHAEL COX and ERIC
RUSSELL,

Defendants,

_____/

## OPINION AND ORDER GRANTING *CANTRELL* PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AS TO INTERVENING DEFENDANT ERIC RUSSELL, DENYING MOTION TO INTERVENE BY JENNIFER GRATZ, AND DENYING AS MOOT PLAINTIFFS' RESPECTIVE MOTIONS TO CERTIFY THE MATTERS AS CLASS ACTIONS, INTERVENING DEFENDANT ERIC RUSSELL'S MOTION FOR SUMMARY JUDGMENT, *CANTRELL* PLAINTIFFS' MOTION TO COMPEL DISCOVERY, AND INTERVENING DEFENDANT ERIC RUSSELL'S MOTION TO COMPEL DISCOVERY FROM THE UNIVERSITY DEFENDANTS

Today the Court filed an opinion and order granting the Michigan Attorney General's motion for summary judgment and a judgment dismissing the challenge by the plaintiffs in these consolidated cases to the constitutionality of an amendment to Michigan's constitution, which is generally referred to as Proposal 2. There are several motions before the Court that remain pending, and the Court will address them in this order. The plaintiffs in the *Cantrell* case move for summary judgment against intervening defendant Eric Russell on the ground that the basis for his interest in the litigation has evaporated following the rejection of his application to the University of Michigan's law school, which was considered under post-Proposal 2 criteria. The Court finds that Mr. Russell no longer has an interest in the subject matter of this case that cannot be protected adequately by the parties before the Court. Therefore, the Court will grant the motion for summary judgment and dismiss Mr. Russell as a party defendant. One Jennifer Gratz has filed a belated motion to intervene. The Court finds that Ms. Gratz fails to satisfy the requirements to permit her to intervene by right or permissably, and the Court will deny her motion. The Court also finds that its opinion and judgment on the State's summary judgment motion moots the pending discovery and class certification motions, and consequently those motions will be denied.

## I.

As explained in the Court's opinion and order filed today adjudicating the parties' other motions for summary judgment, this litigation was commenced on November 8, 2006 by a group of organizations and individuals (the *Coalition* plainitffs), immediately after the adoption by the Michigan electorate of a state constitutional amendment that effectively banned affirmative action programs by the State and its political subdivisions "in the operation of public employment, public education, or public contracting." Mich. Const. art. I, § 26(1). Another group of individuals with

ties to the University of Michigan (the *Cantrell* plaintiffs) brought suit on December 19, 2006, contending that Proposal 2 is unconstitutional as it is applied to public colleges and universities.

On December 18, 2006, Eric Russell, who had applied for admission at the University of Michigan's law school, filed a motion to intervene as a party defendant. Russell was accepted by Wayne State University Law School beforehand, but his application to Michigan's law school was still pending. Russell argued in his motion to intervene that he had a substantial interest in this case because, as a white male applicant to Michigan, he stood to gain or lose depending on whether Proposal 2 remained in full force and effect, and he was concerned about "both his interest in being treated equally in the admissions process and in maximizing his chances of being admitted." Russell Mot. to Int. [dkt # 27] at 7. Russell argued that these interests would possibly be impaired if the Court denied intervention because he sought to have Proposal 2 become effective "as soon as possible," while the plaintiffs and the university defendants sought its invalidation. *See id.* at 9.

In addition, Russell contended that his interests would not be represented adequately by the then-present parties to the case because the university defendants and Governor Granholm had expressed strong disapproval of Proposal 2. Presciently, Russell also made this argument with respect to Attorney General Cox on the grounds that he might have the inclination to resolve this litigation by permitting the university defendants to temporarily ignore Proposal 2 during the 2006-2007 admissions cycle. *Id.* at 10. Such a resolution, sounding in eventual compliance, "would not do Eric Russell much good at all." *Ibid.* Unlike some members of the public, Russell represented that his interest was "to have a non-discriminatory and non-preferential system instituted right *now*, while his application is still under consideration." *Ibid.*

At around the same time Mr. Russell filed his motion for intervention, several other entities filed motions seeking the same relief. Before ruling on these matters, however, the Court entertained a stipulation requesting entry of a preliminary injunction that would have exempted the university defendants from complying with Proposal 2 through the 2006-2007 admissions cycle. The stipulation was signed by Michigan Attorney General Michael Cox, who had been ordered to intervene in the case. The Court entered an order pursuant to the stipulation, but that order was stayed pending appeal by the Sixth Circuit on December 29, 2006. *Coalition to Defend Affirm. Action v. Granholm*, 473 F.3d 237 (6th Cir. 2006).

On December 27, 2006, the Court issued an opinion and order addressing all of the motions to intervene, denying them all except Russell's. *Coalition to Defend Affirmative Action v. Granholm*, 240 F.R.D. 368 (E.D. Mich. 2006), *aff'd*, 501 F.3d 775 (6th Cir. 2007). The Court determined that Russell qualified for intervention of right under Federal Rule of Civil Procedure 24(a) because he satisfied the four elements recognized in the controlling jurisprudence where the other putative intervenors did not. The Court stressed the uniqueness of Russell's situation: as a white male with an application under consideration by the University of Michigan, Russell represented a tangible interest that no other party (or would-be intervenor) could claim. For instance, with respect to the element of timeliness, the Court explained that Russell satisfied this element because it was sensible for him to seek intervention only upon learning that the university defendants sought to forestall Proposal 2's effective date. *Id.* at 374. Similarly, the Court found that Russell had a substantial legal interest in intervention because, "if the present plaintiffs are successful in obtaining a ruling that the constitutional amendment is invalid, Russell's chances of gaining admission to the University of Michigan law school may be diminished." *Id.* at 375.

Subsequently, the Court held a scheduling conference with both the *Coalition* and *Cantrell* plaintiffs to establish dates and an approach for handling the litigation. The actions were consolidated, and the Court ordered that all of the defendants in one action would be deemed defendants in the other action. The Court then requested the parties to submit joint stipulations of fact with the hope that the issues might be pared down to only those that were genuinely disputed. That attempt failed, however, as the parties found no meaningful common ground.

In mid-May 2007, the *Coalition* and *Cantrell* plaintiffs each submitted a motion for class certification. Attorney General Cox and Governor Granholm each opposed the motions for class certification, while Eric Russell concurred in the relief sought. The Court held a hearing on the motions on August 15, 2007 and took them under advisement.

In the meantime, on January 27, 2007 Eric Russell was denied admission to the University of Michigan Law School. It is undisputed that this decision was made in compliance with Proposal 2. Sarah Zearfoss, Assistant Dean and Director of Admissions at the University of Michigan, testified that she initially reviewed Mr. Russell's application on December 22, 2007 and then placed it on "hold" along with other applications that had been filed before Proposal 2's effective date. She then "looked at it without taking race into account as a factor." Mot. for Summ. J as to Russell, Ex. L, Zerfoss dep. at 199. She explained:

> Q. And do you recall the reasons, the primary reasons that you decided to deny Eric Russell's application?
>
> A. Again, it's really impossible to identify the particular thing that made a decision. I do recall what I thought were weaknesses in the application.
>
> Q. And what were those?
>
> A. Well, there were a lot of them.

. . .

Q.   And given all those qualities that you've just talked about, would you characterize Mr. Russell's application for admission as a close case for admission.

A.  No, it was not.

Q.  Would you say that's the case whether you were applying the pre-Proposal 2 policy or the post-Proposal 2 policy?

A.  That's correct.

*Id.* at 200, 205.  It is also undisputed that Michigan did consider race in the initial application process prior to Proposal 2.

Assistant Dean Zearfoss also discussed how Russell would be treated should he submit a transfer application upon completion of his first year at Wayne State University Law School, as well as financial aid considerations if he were accepted.  Zearfoss testified that race was not a factor, and in fact never had been when transfer applications were considered.  As for financial aid, Zearfoss's testimony was less illuminating, but she did indicate that Proposal 2 has not impacted the process.

Turning to Wayne State University, law school Dean Frank H. Wu testified that race does not and will not affect Eric Russell's participation in law school activities and, more importantly, his eligibility for financial aid and scholarships.  With respect to student activities, including participation in law review, Dean Wu stated that Proposal 2 had changed nothing. Dean Wu's testimony concerning financial aid was equally unequivocal, stating that he had "no reason to believe that if Proposal 2 were struck down at any point by a court, that any financial aid decision made as to Eric Russell or any other student would turn out differently because of race."  Mot. for Summ. J. as to Russell, Ex. M, Wu dep. at 185-86.  Dean Wu also testified that Wayne State was in the process of amending scholarships to ensure conformity with Proposal 2.  He stated that

thirteen or fourteen scholarships funded in part by private donors contained impermissible criteria, and the school was therefore "systematically approaching donors . . . to indicate to them that following passage of Prop 2, references to race, gender or ethnicity and so on are impermissible." *Id.* at 238. Wu further stated that he had reached resolutions with some of the donors, thereby continuing funding for the scholarships. Wu confirmed that, as a Wayne State student, Eric Russell would be eligible to receive those scholarships provided that he met the criteria not referring to race, ethnicity, or gender. Finally, Dean Wu said that if a court declared Proposal 2 unconstitutional, he had "no way of predicting what the behavior of individual donors would be, but . . . [w]e would not expect even if Prop 2 were struck down tomorrow by a court, that we would go back and renegotiate the agreements." *Id.* at 239-40.

The *Cantrell* plaintiffs filed the present motion for summary judgment on October 5, 2007. The university defendants and the *Coalition* plaintiffs concur in the request, and Attorney General Cox takes no position on the matter.

During the litigation, the parties filed various motions to compel discovery. Those motions are rendered moot by this Court's disposition of the attorney general's motion for summary judgment, and they will be denied.

Finally, on February 1, 2008, Jennifer Gratz belatedly filed a motion to intervene as a defendant in the consolidated matters through the same attorney that represents intervening defendant Eric Russell. Gratz argues that she has an interest in this litigation because she once lived in Michigan and she might apply to the University of Michigan law school for admission in 2009 or 2010. She explains that she did not move to intervene until after the dispositive motion deadline

passed in this case because it only recently occurred to her that she might want to apply to a law school in Michigan.

## II.

A motion for summary judgment under Fed. R. Civ. P. 56 presumes the absence of a genuine issue of material fact for trial. The Court must view the evidence and draw all reasonable inferences in favor of the non-moving party, and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). The "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (internal quotes omitted).

A fact is "material" if its resolution affects the outcome of the lawsuit. *Lenning v. Commercial Union Ins. Co.*, 260 F.3d 574, 581 (6th Cir. 2001). "Materiality" is determined by the substantive law claim. *Boyd v. Baeppler*, 215 F.3d 594, 599 (6th Cir. 2000). An issue is "genuine" if a "reasonable jury could return a verdict for the nonmoving party." *Henson v. Nat'l Aeronautics and Space Admin.*, 14 F.3d 1143, 1148 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 248). Irrelevant or unnecessary factual disputes do not create genuine issues of material fact. *St. Francis Health Care Centre v. Shalala*, 205 F.3d 937, 943 (6th Cir. 2000). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact. *Michigan Paytel Joint Venture v. City of Detroit*, 287 F.3d 527, 534 (6th Cir. 2002).

The *Cantrell* plaintiffs argue that intervening defendant Russell should be dismissed from the case because the sole basis justifying his intervention – his pending application for admission to the University of Michigan Law School – no longer exists. Russell was denied admission to Michigan based on post-Proposal 2 criteria and he presently is a student at Wayne State University Law School. Russell concedes that he no longer has a pending application to Michigan's law school, but he says that he might want to transfer there, and he may also apply to either Wayne or Michigan for financial aid. He contends that absent Proposal 2, those institutions might consider race as a factor in deciding those applications. Russell also believes that the Michigan attorney general remains unable to protect his interests adequately.

When a party that has been granted intervention as of right no longer meets the requirements for such intervention, a court properly dismisses that party from the case. *See Morgan v. McDonough*, 726 F.2d 11, 14 (1st Cir. 1984) (affirming dismissal of intervenor where intervenor's interest had become adequately represented by party to the suit); *see also* Advisory Committee Notes to Fed. R. Civ. P. 24 ("An intervention of right . . . may be subject to appropriate conditions or restrictions responsive among other things to the requirements of efficient conduct of the proceedings."). This rule applies to permissive intervention as well. *See Morgan*, 726 F.2d at 15.

Intervention, both as of right and by permission, is governed by Rule 24 of the Federal Rules of Civil Procedure. With respect to both types of intervention, the Sixth Circuit has stated that "Rule 24 should be 'broadly construed in favor of potential intervenors,'" but has also warned that "this does not mean Rule 24 poses no barrier to intervention at all." *Stupak-Thrall v. Glickman*, 226 F.3d 467, 472 (6th Cir. 2000) (quoting *Purnell v. Akron*, 925 F.2d 941, 950 (6th Cir. 1991)).

Rule 24(a) deals with intervention as a matter of right and states:

On timely motion, the court must permit anyone to intervene who:

(1) is given an unconditional right to intervene by a federal statute; or

(2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a). "[T]o intervene as of right under Rule 24(a)(2), a proposed intervenor must establish the following four elements: (1) the motion to intervene is timely; (2) the proposed intervenor has a substantial legal interest in the subject matter of the case; (3) the proposed intervenor's ability to protect that interest may be impaired in the absence of intervention; and (4) the parties already before the court may not adequately represent the proposed intervenor's interest." *United States v. Michigan*, 424 F.3d 438, 443 (6th Cir. 2005).

The first criterion is irrelevant since Russell already is a party to the case. The question is whether he should be permitted to remain in light of his changed circumstances. With the benefit of the parties' briefing on the summary judgment motions, the Court has little trouble concluding that there is no longer a good reason for Russell to remain in the litigation. The main reason undergirding Russell's presence in this case has evaporated, he has no interest at risk in the matter, and even if he did, it appears that the attorney general now has settled on a position that accords adequate representation to individuals in Russell's position.

The Sixth Circuit has adopted a liberal view of the nature of an interest that supports intervention of right, but it has consistently noted that "[t]he inquiry into the substantiality of the claimed interest is necessarily fact-specific." *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1245 (6th Cir. 1997). In *Coalition to Defend Affirmative Action v. Granholm*, 501 F.3d 775 (6th Cir. 2007), the Sixth Circuit reiterated this rule while affirming this Court's December 2006 decision

denying intervention to the Michigan Civil Rights Initiative Committee, the American Civil Rights Foundation, and Toward a Fair Michigan. *See id.* at 780-84; *cf. id.* at 780 ("Although we have noted that this Circuit 'has opted for a rather expansive notion of the interest sufficient to invoke intervention of right,' *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1245 (1997), this does not mean that any articulated interest will do."). The court held that these organizations' interest in the case was inadequate because, once Proposal 2 had been passed, "[t]heir interest in seeing Proposal 2 enforced . . . '[wa]s greatly diminished due to the state's responsibility in enforcing and defending [Proposal 2] as written.'" *Coalition*, 501 F.3d at 781 (quoting *Northland Family Planning Clinic, Inc. v. Cox*, 487 F.3d 323, 346 (6th Cir. 2007)). In line with this conclusion, the Sixth Circuit has consistently held that a generalized political or ideological interest is not sufficient to support intervention by right. *See Northland*, 487 F.3d at 345 (observing that an organization had a weak case for intervention where it had "only an ideological interest in the litigation"); *Providence Baptist Church v. Hillandale Comm., Ltd.*, 425 F.3d 309, 316-17 (6th Cir. 2005) (holding that petition-circulating committee was not entitled to intervention in an action challenging the constitutionality of an ordinance because its stake in the case was "'so generalized it will not support a claim for intervention of right'") (quoting *Athens Lumber Co., Inc. v. Fed. Elec. Comm'n*, 690 F.2d 1364, 1366 (11th Cir. 1982)).

Intervening defendant Russell argues that the nature of the injury in an equal protection claim of the present variety consists not in denial of the ultimate benefit, but in unequal treatment. *Northeastern Florida Chapter of the Associated General Contractors of America v. City of Jacksonville*, 508 U.S. 656 (1993), and *Regents of Univ. of California v. Bakke*, 438 U.S. 265 (1978), support his position. Russell contends that he has a substantial legal interest in this action

in that he has an interest in having his prospective transfer application reviewed without regard to race, gender, or ethnicity. Similarly, he claims an interest premised on a desire to obtain financial aid without regard to these considerations. Although these are not the same interests upon which Russell relied in seeking intervention, they likely suffice for the present.

However, once a substantial legal interest has been established, the Court asks a related question: whether the "intervenor's ability to protect that interest may be impaired in the absence of intervention," or, in this case, in the absence of continued intervention. *Michigan*, 424 F.3d at 443. Generally speaking, satisfaction of the latter inquiry entails only a "minimal" burden. *Grutter*, 188 F.3d at 399. In this case, although Eric Russell has shown a substantial legal interest, he has failed to satisfy the impairment element. As noted earlier, he no longer has an application pending at the Michigan law school. All the evidence suggests that Russell's transfer application would receive the same treatment regardless of the outcome of this case. Although the parties have submitted less evidence on the topic of financial aid at Michigan, what they have proffered likewise suggests that Russell's treatment would be the same whether Proposal 2 stands or falls. In other words, irrespective of Eric Russell's participation in this case and the arguments he might make, Michigan's treatment of Eric Russell will remain the same.

Assistant Dean Zearfoss's undisputed testimony establishes that race is not considered in evaluating transfer applications; this was the case even before Proposal 2 (dating back to at least 2001, when Zearfoss took over); and Michigan would not change this policy if Proposal 2 were struck down. Russell makes a valid point that, notwithstanding Zearfoss's representation, the university *could* legally consider race in transfer applications if the Court invalidated Proposal 2. "It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive

-13-

a federal court of its power to determine the legality of the practice." *City of Mesquite v. Aladdin's Castle*, 455 U.S. 283, 289 (1982). The theory behind this rule seems to be that, when the defendant is able to commence the practice once more and has only stopped following the initiation of litigation, voluntary cessation of the practice is inherently suspect. *See ibid.* However, the Sixth Circuit and other courts have confirmed that the holding in *Aladdin's Castle* hinged largely on the fact that the defendant in that case had expressed an intent to take up the challenged practice once more if the case were dismissed as moot. *Kentucky Right to Life, Inc. v. Terry*, 108 F.3d 637, 645 (6th Cir. 1997) ("Critical to the Court's decision [in *Aladdin's Castle*], however, was the City's announced intention to reenact the unconstitutional ordinance if the case was dismissed as moot.") (citing *Aladdin's Castle*, 455 U.S. at 289-90); *see also Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 901 (9th Cir. 2007) (stating that *Aladdin's Castle* is limited to the "rare situation where it is *virtually certain* that the repealed law [will] be reenacted," and the fact that litigation may have prompted the repeal does not alone evince an intent to reenact) (internal quotes omitted).

In this case it is inappropriate to second-guess Michigan's representation when the evidence suggests its historical and future avoidance of consideration of race in transfer applications is not mere lip-service. Where a defendant's voluntary cessation of a challenged practice may be inherently suspect, *see Aladdin's Castle*, 455 U.S. at 289, there is nothing suspicious about a defendant proclaiming that it will continue to abide by a policy it has employed for years and which has not been changed materially by the commencement of litigation or the predicate events of that litigation. Michigan has not voluntarily *ceased* a challenged practice; it has simply stood by a course of action that is valid under Proposal 2.

On a related note, Russell suggests that Zearfoss's testimony leaves open the possibility that Michigan may consider ethnicity, as opposed to race, in the transfer application process. This argument finds no support in the record. Although the definitions of race and ethnicity may be distinct, when Zearfoss referred to ethnicity, she used the term as if it were interchangeable with race. Whatever ambiguity may exist on this point does not alter Zearfoss's testimony that Mr. Russell will not be treated differently than others because he is white.

The evidence in this case also suggests that Russell's other interest concerning Michigan – equal treatment in financial aid decisions – will likewise not be impaired if his participation in this litigation is discontinued. Although Zearfoss stated that financial aid was within her area of expertise "to a certain degree," she represented unequivocally that Proposal 2 has not impacted the financial aid process. Zearfoss dep. at 215-16. This testimony has not been contradicted, and there is no reason to think that Michigan would consider race in its financial aid process in the event Proposal 2 were struck down.

The same conclusion can be made with respect to Russell's matriculation through Wayne's law school. Dean Wu testified that "[r]ace will not affect any financial aid decision made as to Eric Russell or any other student at Wayne State University Law School." Wu dep. at 185. Further, he stated that he has no reason to believe this would change in the event Proposal 2 were invalidated. It is unclear whether race was considered in the context of need-based financial aid before Proposal 2; there is in fact no evidence on the point. However, it is clear that race, ethnicity, or gender were factors in approximately fourteen annual scholarships. Wu dep. at 238. Wu testified that, following the passage of Proposal 2, he or a development officer "systematically approach[ed]" the donors to inform them that such criteria were impermissible. *Ibid.* Some of the donors – it is unclear how

many – agreed to continue funding the scholarships with elimination of the impermissible criteria. *Id.* at 239.  Accordingly, assuming he met the remaining criteria (for instance, one or more of the scholarships have been set aside for people from a particular geographic area), Russell "would be eligible to receive those scholarships."  *Ibid.*  This evidence remains unrebutted.

The Court concludes, therefore, that Eric Russell has failed to establish that impairment of his substantial legal interest with respect to both Michigan and Wayne State is possible if continued intervention is denied.  Although proof of impairment need only be "minimal," *Grutter*, 188 F.3d at 399, this element poses a burden nonetheless, which Russell has failed to carry.

Finally, having the benefit of reviewing the summary judgment briefs, it is apparent that Russell's interest in the litigation now parallels that of the attorney general.  At one point in this litigation, the attorney general's lack of consistency in its acceptance of Proposal 2 was characterized by the court of appeals as "puzzl[ing]," *Coalition to Defend Affirm. Action v. Granholm*, 473 F.3d 237, 246 (6th Cir. 2006), and rightly so.  However, it now appears that the attorney general has resolved to defend the measure, making arguments in his motion brief that Russell himself echoes in his own filings.  The fact that the two summary judgment motions duplicate each other convinces the Court that Russell's presence in the litigation is a mere make-weight that adds nothing of substance to the debate over Proposal 2's constitutionality.  Therefore, it is apparent that the attorney general – the party now before the Court – adequately represents the intervening defendant's interest, which has now matured into a judgment in the State's favor.

The motion for summary judgment as to intervening defendant Eric Russell, therefore, will be granted.

III.

     The motion by Jennifer Gratz to intervene as a defendant can be disposed of quite easily based on her failure to satisfy any of the four factors required to establish a right to intervene. First, the motion is untimely. Timeliness is "evaluated in the context of all relevant circumstances." *Stupak-Thrall*, 226 F.3d at 472-73 (internal quotation marks omitted). Several factors are considered, including the developments in the case, the purpose for intervention, and how long the proposed intervenors knew of their interest in the property or transaction at issue before they sought permission to intervene. *Id.* at 473-74. This case has now proceeded to a final disposition, and Gratz did not seek intervention until after discovery closed and all the parties filed their summary judgment motions. The purpose for intervention Gratz cites is to take up the cause of white law students defending Proposal 2 in the event Mr. Russell is dismissed from the case because of his changed circumstances. However, Mr. Russell's application to the Michigan law school was decided adversely to him in January 2007, and he was admitted to and began attending Wayne's law school in August 2007. Ms. Gratz has been aware of this case throughout its pendency. She has not explained the delay in applying for intervention.

     Second, Ms. Gratz has not identified a substantial legal interest in the subject matter of the case. She has no application to any Michigan school pending. She represents in her motion that she might apply to Michigan's law school, but she testified under oath in her deposition in San Francisco in this case that she is a resident of California and has no immediate plans to return to Michigan. The Court finds no credible evidence that Ms. Gratz has an interest in the legal issues in this case that derives from her attempt to situate herself similarly to Russell's pre-admission-decision posture. Of course, Ms. Gratz also directed the activities of the Michigan Civil Rights Initiative Committee,

which was the driving force behind the passage of Proposal 2, suggesting that she has an ideological interest in defending the enforcement of the state constitutional amendment. However, the Sixth Circuit has deemed a mere interest in the "subsequent enforcement of the rule after its enactment" an insufficient reason to support intervention by right. *Northland Family Planning Clinic, Inc. v. Cox*, 487 F.3d 323, 345 (6th Cir. 2007). The court explained:

> [T]he public at large – including public interest groups – has an interest in the procedure by which a given legal requirement is enacted as a matter of democratic legislative process. On the other hand, in a challenge to the constitutionality of an already-enacted statute, as opposed to the process by which it is enacted, the public interest in its enforceability is entrusted for the most part to the government, and the public's legal interest in the legislative process becomes less relevant.

*Ibid.*

Gratz's ideological interest is no different than that of the organization she directed, the MCRI, to which the Court already denied intervention. Her ability to press these issues is cast into doubt by her apparent "confusion at the evidentiary hearing [on the propriety of MRCI's conduct in obtaining petition signatures] as to the purpose of the MCRI's proposal." *Operation King's Dream v. Connerly*, 501 F.3d 584, 590 (6th Cir. 2007). Moreover, the Sixth Circuit has held that "the MCRI's . . . status as [an] organization[] involved in the process leading to the adoption of Proposal 2 is insufficient to provide [it] with a substantial legal interest in a lawsuit challenging the validity of those portions of Michigan's constitution amended by Proposal 2." *Coalition to Defend Affirmative Action v. Granholm*, 501 F.3d 775, 782 (6th Cir. 2007).

Third, since Gratz has not demonstrated a sufficient interest to support intervention by right, she cannot show that denial of intervention will impair her ability to protect a substantial interest. *Coalition to Defend Affirmative Action*, 240 F.R.D. at 375 ("Of course, the inability to protect one's interest posits the existence of an interest to begin with."). The disposition of the summary

-18-

judgment motions reinforces the fact that intervention is not necessary to defend the ballot proposal as well.

Fourth, as with Eric Russell, the attorney general will adequately represent Gratz's interest, such as it is, in matters before the Court.

Gratz also seeks permissive intervention under Rule 24(b). An applicant for permissive intervention "must prove that the motion for intervention is timely, there is at least one common question of law or fact, and the balancing of undue delay, prejudice to the original parties, and any other relevant factors favors intervention." *Coalition to Defend Affirmative Action*, 240 F.R.D. at 377 (citing *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1248 (6th Cir. 1997)). It is apparent that Gratz's motion has come too late. The case in the district court is over, at least for now. Allowing another party into the litigation would do nothing but prolong the process and delay the parties' inevitable date with the court of appeals.

For these reasons, the motion to intervene as a party defendant by Jennifer Gratz will be denied.

## IV.

Because the attorney general's motion for summary judgment was granted, there is no need for the Court to address the class certification motions. Rule 23(c) provides: "At an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action." Fed. R. Civ. P. 23(c)(1)(A). Although the Sixth Circuit has not interpreted this language, other courts and commentators have noted that a district court may decide dispositive motions, including motions for summary judgment, prior to entertaining class certification. A district court enjoys discretion in determining whether and when

to certify a case, *Reeb v. Ohio Dept. of Rehabilitation and Correction*, 435 F.3d 639, 643 (6th Cir. 2006), and postponing a ruling on that matter in the interest of overall efficiency is appropriate.

The Manual for Complex Litigation reflects the basic idea:

> The court may rule on motions pursuant to Rule 12, Rule 56, or other threshold issues before deciding on certification; however, such rulings bind only the named parties. Most courts agree, and Rule 23(c)(1)(A) reflects, that such precertification rulings on threshold dispositive motions are proper, and one study found a substantial rate of precertification rulings on motions to dismiss or for summary judgment. Precertification rulings frequently dispose of all or part of the litigation.

Manuel for Complex Litigation (Fourth ed.) § 21.133. As Rule 23 suggests, extensive discovery is often needed to rule on motions for class certification. *See* Fed. R. Civ. P. 23(a)-(b). Although conceptually distinct, the facts discovered often pertain to the merits. *See Oscar Private Equity Investments, Inc. v. Allegiance Telecom, Inc.*, 487 F.3d 261, 268 (5th Cir. 2007) (observing that merits and certification questions often overlap); *Miles v. Merrill Lynch*, 471 F.3d 24, 41 (2d Cir. 2006) ("[T]he obligation to make [certification] determinations is not lessened by overlap between a Rule 23 requirement and a merits issue, even a merits issue that is identical with a Rule 23 requirement."); Fed. R. Civ. P. 23 Advisory Committee Notes to the 2003 Amendments ("[I]t is appropriate to conduct controlled discovery into the 'merits,' limited to those aspects relevant to making the certification decision on an informed basis."). Therefore, if it becomes apparent that the case cannot proceed on the merits, it makes little sense to devote scare judicial resources to a merely academic certification analysis. *See Wright v. Schock*, 742 F.2d 541, 544 (9th Cir. 1984) ("It is reasonable to consider a Rule 56 motion first when early resolution of a motion for summary judgment seems likely to protect both the parties and the court from needless and costly further litigation."). As the *Oscar* court explained, the authorities' recognition of this and other

circumstances has "shaped the evolution of class certification and Rule 23. Rule 23(c)(1)(A) no longer demands that the district court rule on class certification 'as soon as practicable,' but instead insists only upon a ruling 'at an early practicable time.'" *See Oscar*, 487 F.3d at 267.

Dismissal prior to certification is *res judicata* as to the class representatives, but has no effect on the putative class members. *Wright*, 742 F.2d at 544. Entry of summary judgment dismissing the claims of class representatives normally has the effect of mooting a motion for class certification. *Cowen v. Bank United of Texas*, 70 F.3d 937, 941 (7th Cir. 1995); s*ee also Holman v. Rock Financial Corp.*, 388 F.3d 930, 941 (6th Cir. 2004) (concluding that "[w]e need not address the district court's denial of Plaintiff's motion for class certification because, as held above, the district court appropriately dismissed her complaint on the merits").

The Court's decision to grant summary judgment in favor of the State moots the class certification motions. Therefore, these motions will be denied.

V.

The Court finds that Eric Russell no longer has a sustainable position to support intervention. Likewise, Jennifer Gratz has failed to demonstrate that she should intervene either by right or by leave. The decision on the merits of the plaintiffs' claims in the summary judgment proceedings renders a decision on class certification unnecessary. Similarly, the dismissal of the action renders moot the pending discovery motions.

Accordingly, it is **ORDERED** that the *Cantrell* plaintiffs' motion for summary judgment as to intervening defendant Eric Russell [dkt #172] is **GRANTED**. Eric Russell is dismissed as a party defendant to these consolidated actions.

It is further **ORDERED** that intervening defendant Eric Russell's motion for summary judgment [dkt #202] is **DENIED** as moot.

It is further **ORDERED** that the plaintiffs' respective motions to certify the matters as class actions [dkt #107, 121] are **DENIED** as moot.

It is further **ORDERED** that the *Cantrell* plaintiffs' motion to compel discovery [dkt #156] is **DENIED** as moot.

It is further **ORDERED** that intervening defendant Eric Russell's motion to compel discovery from the university defendants [dkt #169] is **DENIED** as moot.

It is further **ORDERED** that the motion to intervene by Jennifer Gratz [dkt #241] is **DENIED**.

<div style="text-align:right">

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

</div>

Dated: March 18, 2008

<div style="border:1px solid black">

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 18, 2008.

s/Felicia M. Moses
FELICIA M. MOSES

</div>