UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

COALITION TO DEFEND AFFIRMATIVE ACTION,
INTEGRATION AND IMMIGRATION RIGHTS AND
FIGHT FOR EQUALITY BY ANY MEANS NECESSARY
(BAMN), UNITED FOR EQUALITY AND AFFIRMATIVE
ACTION LEGAL DEFENSE FUND, RAINBOW PUSH
COALITION, CALVIN JEVON COCHRAN, LASHELLE
BENJAMIN, BEAUTIE MITCHELL, DENESHEA RICHEY,
STASIA BROWN, MICHAEL GIBSON, CHRISTOPHER
SUTTON, LAQUAY JOHNSON, TURQOISE WISE-
KING, BRANDON FLANNIGAN, JOSIE HYMAN,
ISSAMAR CAMACHO, KAHLEIF HENRY,
SHANAE TATUM, MARICRUZ LOPEZ,
ALEJANDRA CRUZ, ADARENE HOAG, CANDICE
YOUNG, TRISTAN TAYLOR, WILLIAMS FRAZIER,
JERELL ERVES, MATTHEW GRIFFITH,
LACRISSA BEVERLY, D'SHAWN
FEATHERSTONE, DANIELLE NELSON,
JULIUS CARTER, KEVIN SMITH, KYLE
SMITH, PARIS BUTLER, TOUISSANT KING,
AIANA SCOTT, ALLEN VONOU, RANDIAH
GREEN, BRITTANY JONES, COURTNEY DRAKE,
DANTE DIXON, JOSEPH HENRY REED,
AFSCME LOCAL 207, AFSCME LOCAL 214,
AFSCME LOCAL 312, AFSCME LOCAL 836,
AFSCME LOCAL 1642, AFSCME LOCAL 2920,
and the DEFEND AFFIRMATIVE ACTION PARTY,

Case No. 06-15024
Hon. David M. Lawson

**OPINION AND ORDER
DENYING INTERVENING
DEFENDANT ERIC
RUSSELL'S MOTION
FOR ATTORNEY'S
FEES AND COSTS**

                Plaintiffs,

v.

THE REGENTS OF THE UNIVERSITY OF MICHIGAN,
the BOARD OF TRUSTEES OF MICHIGAN STATE
UNIVERSITY, the BOARD OF GOVERNORS OF WAYNE
STATE UNIVERSITY, the TRUSTEES of any other public
college or university, community college, or school district,
ATTORNEY GENERAL MICHAEL COX, and ERIC
RUSSELL,

                Defendants,

-and-

| | |
|---|---|
| CHASE CANTRELL, M.N., a minor child, by Karen Nestor, Mother and Next Friend, KAREN NESTOR, Mother and Next Friend of M.N., a minor child, C.U., a minor child, by Paula Uche, Mother and Next Friend, PAULA UCHE, Mother and Next Friend to C.U., a minor child, JOSHUA KAY, SHELDON JOHNSON, MATTHEW COUNTRYMAN, M.R., a minor child, by Brenda Foster, Mother and Next Friend, BRENDA FOSTER, Mother and Next Friend of M.R., a minor child, BRYON MAXEY, RACHEL QUINN, KEVIN GAINES, DANA CHRISTENSEN, T.J., a minor child, by Cathy Alfaro, Guardian and Next Friend, CATHY ALFARO, Guardian and Next Friend of T. J., a minor child, S.W., a minor child, by Michael Weisberg, Father and Next Friend, MICHAEL WEISBERG, Father and Next Friend of S.W., a minor child, CASEY KASPER, SERGIO EDUARDO MUNOZ, ROSARIO CEBALLO, KATHLEEN CANNING, EDWARD KIM, M.C.C., II, a minor child, by Carolyn Carter, Mother and Next Friend, CAROLYN CARTER, Mother and Next Friend of M.C.C., II, a minor child, J.R., a minor child, by Matthew Robinson, Father and Next Friend, and MATTHEW ROBINSON, Father and Next Friend of J.R., a minor child, | CONSOLIDATED CASES<br><br>Case No. 06-15637<br>Hon. David M. Lawson |

                       Plaintiffs,

v.

ATTORNEY GENERAL MICHAEL COX and ERIC RUSSELL,

                       Defendants,

_____/

## OPINION AND ORDER DENYING INTERVENING DEFENDANT ERIC RUSSELL'S MOTION FOR ATTORNEY'S FEES AND COSTS

Eric Russell, a now-dismissed intervening defendant in this litigation, has filed a motion for attorney's fees against certain Michigan universities and the State's governor and attorney general, all co-defendants in the present action, under 42 U.S.C. § 1988(b), which states: "In any action or

proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92-318, the Religious Freedom Restoration Act of 1993, the Religious Land Use and Institutionalized Persons Act of 2000, title VI of the Civil Rights Act of 1964, or section 13981 of this title, the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." Russell brought no claim under any of these federal statutes, and ultimately he was dismissed as a party since he no longer had a personal stake in the outcome of the case. He filed no cross-claim or counterclaim, and the remaining defendants ultimately prevailed on summary judgment by advancing arguments mimicked by Russell. Russell does not seek attorney's fees from the plaintiffs. Rather, he contends that *he* should be considered a prevailing plaintiff because he succeeded on interlocutory appeal in obtaining a stay of a temporary injunction issued by this Court upon the stipulation of all the other parties before he had intervened in the case, thereby upsetting the delay in effectuating a state constitutional amendment (until the next school admission cycle) that would have prohibited consideration of race as a factor in admissions to state colleges and universities. The Court heard the parties' arguments in open court on April 27, 2009. The Court finds that Mr. Russell cannot be considered a prevailing plaintiff, and even if he were a prevailing defendant, he has not established an entitlement to attorney's fees from the co-defendants in this case.

I.

The basic facts of the case, as they pertain to intervenor Russell, are as follows. On November 7, 2006, Michigan voters approved a proposal to amend the Michigan constitution to bar affirmative action programs in public education, hiring and contracting. That ballot initiative has come to be known in this litigation and elsewhere as "Proposal 2." The day after the election, a

collection of interest groups and individuals (the *Coalition* plaintiffs) brought suit alleging that the state constitutional amendment violated the United States Constitution and federal law. Another group (the *Cantrell* plaintiffs) brought suit on December 19, 2006, contending that Proposal 2 was unconstitutional as it is applied to public colleges and universities. This Court consolidated these cases on January 5, 2007.

The original defendants in the lawsuit were Michigan's governor and the boards of the State's public universities, who had taken public positions before the election in opposition to the proposal. On December 11, 2006, the university defendants filed a motion for a preliminary injunction to delay the effective date of Proposal 2 until after the then-current college admissions cycle, which was in mid-cycle. No opposition to the motion had been filed at the time. The State's attorney general, Michael Cox, had taken a public position in favor of the proposal. The Court ordered the attorney general to intervene.

The parties presumably addressed the issues in the preliminary injunction motion through negotiation, and they presented a stipulation to the Court on or about December 17, 2006. On December 19, 2006, pursuant to the stipulation of all parties at the time (but not Russell), the Court entered an order and then an amended order granting a temporary injunction suspending the enforcement of Proposal 2 at the three Michigan public universities through the end of the admissions and financial aid cycles for 2006-07 school year, that is, until July 1, 2007.

Meanwhile, on December 18, 2006, Eric Russell, who had applied for admission to the University of Michigan Law School, along with the organization called Toward a Fair Michigan, moved to intervene as defendants in this case. The next day, Russell moved for an expedited hearing on his motion to intervene and for a stay of the Court's temporary injunction pending appeal of the

order. It appears that Russell simultaneously filed a motion in the United States Court of Appeals for the Sixth Circuit for emergency relief, including a stay, as well. On December 27, 2006, this Court granted Russell's motion to intervene and denied other would-be intervenors' motions to intervene. *Coal. to Defend Affirmative Action v. Granholm*, 240 F.R.D. 368 (E.D. Mich. 2006), *aff'd* 501 F.3d 775 (6th Cir. 2007). The Court did not rule on Russell's motion for a stay, awaiting responses from the other parties. In the meantime, the Sixth Circuit appears to have ordered the parties to file their responses by December 28, 2006 and replies by December 29, 2006. The court of appeals notified this Court by letter (addressed incorrectly to the court offices in Bay City, Michigan) dated December 22, 2006 that it requested a response from this Court within ten days, which would have been by January 9, 2007. *See* Fed. R. Civ. P. 6(a). However, on December 29, 2006, the court of appeals filed a lengthy opinion granting a stay of the stipulated injunction until a merits appeal could be completed. *Coal. to Defend Affirmative Action v. Granholm*, 473 F.3d 237 (6th Cir. 2006). This Court denied Russell's stay motion pending in the district court as moot on January 4, 2007. The court of appeals eventually dismissed its case as moot.

Proposal 2 took effect on December 23, 2006, suspended only for the few days during which the stipulated preliminary injunction was in effect. The universities thereafter implemented Proposal 2 and applied it to the 2006-07 admissions cycle.

This Court then turned to the merits of the case. After a futile attempt to expedite matters by reducing potential fact disputes to stipulations, the Court established a discovery schedule and eventually heard arguments on dispositive motions. On March 18, 2008, the Court granted the Michigan attorney general's motion for summary judgment via opinion and order holding that Proposal 2 did not violate the federal Constitution. *Coal. to Defend Affirmative Action v. Granholm*,

539 F. Supp. 2d 924 (E.D. Mich. 2008). The Court denied the *Cantrell* plaintiffs' motion to alter or amendment judgment on December 11, 2008. *Coalition to Defend Affirmative Action v. Granholm*, 592 F. Supp. 2d 948 (E.D. Mich. 2008). Appeals from these rulings remain pending.

The Court had granted Russell's motion to intervene in December 2006 based in part on the finding that his interest in seeing Proposal 2 upheld was qualitatively different than the State's. In fact, the attorney general had taken inconsistent positions on the question of Proposal 2's enforcement. However, by the time the merits briefing occurred, it became apparent that Russell's interest in the litigation paralleled that of the attorney general, and Russell's filings substantially mirrored the arguments made by the State. In addition, Russell's application to the University of Michigan Law School was denied based on post-Proposal 2 admission standards. The Court concluded that "the two summary judgment motions duplicate each other," "Russell's presence in the litigation is a mere makeweight that adds nothing of substance to the debate over Proposal 2's constitutionality," and "the attorney general . . . adequately represents the intervening defendant's interest." *Coal. to Defend Affirmative Action v. Granholm*, 539 F. Supp. 2d 960, 971 (E.D. Mich. 2008). The Court, therefore, granted the plaintiffs' motion for summary judgment as to intervening defendant Russell and dismissed him as a party on March 18, 2008. Russell's appeal of that ruling remains pending.

On January 8, 2009, Russell filed a motion seeking $144,948.90 in attorney's fees and $1,734.30 in costs to be paid by the defendants. He argues that he is entitled to these fees and costs as a prevailing party under 42 U.S.C. § 1988(b). Russell has since realized that a stipulated dismissal of Governor Granholm from the case shields her from an award of attorney's fees against her, and he has redirected his motion only at the remaining state defendants.

The University defendants respond that Russell's motion is untimely because it was filed nine months after the Court entered judgment against the plaintiffs in March 2008. They also contend that Russell cannot qualify as a prevailing plaintiff, and he cannot satisfy the heavy burden prevailing defendants must meet before attorney's fees may be awarded. The *Cantrell* plaintiffs likewise oppose an award of attorney's fees and costs against the University defendants on similar grounds. The attorney general argues that the motion should be denied because his interests were mostly aligned with Russell's on the substantive merits of the case. He also points out that Russell did not prevail against the attorney general and therefore the attorney general is not responsible for losses that resulted to Russell, if any.

II.

A.

Under 42 U.S.C. § 1988, a district court may "in its discretion . . . allow the prevailing party . . . a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). Attorney's fees motions generally are filed at the conclusion of the case, and in no event "later than 14 days after entry of judgment." Fed. R. Civ. P. 54(d)(2)(B). The Local Rules direct parties to file their motions for attorney's fees within twenty-eight days of the entry of judgment. *See* E.D. Mich. LR 54.1.2(a). However, the Sixth Circuit decided that "when a Rule 59(e) motion is filed and finality is suspended, the judgment is neither final nor an 'order from which an appeal lies.'" *Miltimore Sales, Inc. v. Int'l Rectifier, Inc.*, 412 F.3d 685, 688 (6th Cir. 2005). In recognition of this holding, the Local Rules provides that where a "request for reconsideration under Fed. R. Civ. P. 59(e) has been filed, the time limit shall begin to run upon the denial of the motion." E.D. Mich. LR 54.1.2 cmt.

The defendants here argue that the *Miltimore Sales* rule should not apply to Russell because he was dismissed from the case at the same time the judgment was entered, and the pendency of the *Cantrell* plaintiffs' Rule 59(e) motion should not have suspended the deadline for Russell's filing of the motion for attorney's fees. Although this argument has some superficial appeal, it runs contrary to the logic of the Supreme Court's decision in *Sole v. Wyner*, 551 U.S. 74 (2007). In that case, the Court directed the focus toward the ultimate resolution of the case on the merits when determining whether a preliminary injunction or other transient relief entitles a party to a "prevailing party" status. If Russell prevailed on his motion to dissolve the stay delaying Proposal 2's effective date but Proposal 2 were ultimately found to be unconstitutional, he could not be a prevailing party. Therefore, the intervenor's motion for attorney's fees is subject to the same considerations of finality under Rule 59(e) as the main plaintiffs and defendants. Russell's motion filed within twenty-eight days of the order denying the *Cantrell* plaintiffs' Rule 59(e) motion is timely.

B.

Russell cannot recover attorney's fees and costs unless he is a "prevailing party," either as a plaintiff or a defendant. To be a prevailing party under section 1988, a party must receive "at least some relief on the merits of his claim." *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 603-04 (2001). A party prevails in his lawsuit when there has been a "material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute." *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792-93 (1989). That material alteration must affect the behavior of the defendant towards the plaintiff. *Rhodes v. Stewart*, 488 U.S. 1, 4 (1988). A plaintiff who had obtained "'neither a judgment on the merits nor a court-ordered consent decree'" is not eligible for award of attorney's

fees under section 1988. *Radvansky v. City of Olmsted Falls*, 496 F.3d 609, 620 (6th Cir. 2007) (quoting *Toms v. Taft*, 338 F.3d 519, 528 (6th Cir. 2003)).

Russell did not obtain a judgment in his favor. In fact, summary judgment was entered against him; his claims were dismissed when it became apparent that his intervenor status contributed nothing to the resolution of the main dispute over the constitutionality of Proposal 2. However, attorney's fees awards may be given under section 1988 when a preliminary injunction or stay order issues under certain conditions. *Cf. Garcia v. Younkers Sch. Dist.*, 561 F.3d 97, 102 (2d Cir. 2009) ("Thus, for example, the entry of an enforceable judgment, such as a stay or preliminary injunction, may permit the district court to confer prevailing-party status on the plaintiff notwithstanding the absence of a final judgment on the underlying claim."). The Sixth Circuit has held that a party can be a "prevailing party" for having secured a preliminary injunction, as long as the injunction "represents 'an unambiguous indication of probable success on the merits, and not merely a maintenance of the status quo ordered because the balance of equities greatly favors the plaintiff.'" *Dubuc v. Green Oak Twp.*, 312 F.3d 736, 753-54 (6th Cir. 2002) (quoting *Webster v. Sowders*, 846 F.2d 1032, 1036 (6th Cir. 1988)). But if the injunctive relief is of the "'procedural' variety, even if there is a finding of likelihood of success on the merits, [it] cannot be the basis for interim attorney's fees." *Ibid.* (denying a prevailing-party status to the plaintiff despite his success in obtaining a preliminary injunction ordering the defendant to issue him a temporary certificate of occupancy because the injunction was based on the plaintiff's compliance with several conditions that were imposed upon the plaintiff by the defendant township all along and the court's ruling did not contain an unambiguous discussion of the merits of the case); *see also Dearmore v. City of Garland*, 519 F.3d 517, 524 (5th Cir. 2008) (holding that to qualify as a prevailing party entitled to

attorney fees under section 1988, the plaintiff "(1) must win a preliminary injunction, (2) based upon an unambiguous indication of probable success on the merits of the plaintiff's claims as opposed to a mere balancing of the equities in favor of the plaintiff, (3) that causes the defendant to moot the action, which prevents the plaintiff from obtaining final relief on the merits"); *Sole v. Wyner*, 551 U.S. at 84-86 (declining to bestow a prevailing party status on the party who secured a preliminary injunction but was denied a permanent injunction in the same case). The likelihood of obtaining "prevailing party" status increases where a preliminary injunction entered by the court alters rather than preserves the *status quo ante*. *See Fiarman v. W. Publ'n Co.*, 620 F. Supp. 544, 546-47 (E.D. Mich. 1985).

Russell's "prevailing party" status is tenuous. It is true that the court of appeals's discussion of the stay motion delved deeply into the merits of the case, and its decision cannot fairly be characterized as a mere procedural ruling. However, this Court ultimately dismissed Russell from the case because his claims became moot when he was denied admission to University of Michigan on the basis of race-neutral considerations. At that point, he no longer had a personal interest in enforcement of Proposal 2 in Michigan. The Supreme Court has held on several occasions that a party whose claims become moot prior to the issuance of a final judgment cannot be a "prevailing party" within the terms of the attorney's fees statute. *See, e.g., Lewis v. Continental Bank Corp.*, 494 U.S. 472, 482-83 (1990); *Rhodes v. Stewart*, 488 U.S. 1 (1988); *Hewitt v. Helms*, 482 U.S. 755, 763 (1987). The reasoning behind these holdings is that when the plaintiff's claims are moot, any change in the behavior of the defendant can no longer benefit the plaintiff (or vice versa). *Rhodes*, 488 U.S. at 4.

But the term "prevailing party" has been accorded a "generous formulation." *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). The stay granted by the Sixth Circuit gave Russell what he sought: consideration of his law school application to the University of Michigan under a system that did not include race as a factor in the admission decision. It is doubtful that he could derive some satisfaction from knowing that he was rejected under a post-Proposal 2 regimen. Nonetheless, because the court of appeals gave him what he wanted, this Court will accept for argument's sake that Russell has "prevailed."

C.

The parties have acknowledged that prevailing plaintiffs and prevailing defendants are treated quite differently under section 1988. Prevailing defendants have a far greater burden to justify an award of attorney's fees. *See Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421-22 (1978). Although he was an intervening defendant, Russell contends that he should be considered a situational plaintiff.

The difference in the standards for awarding attorney's fees under section 1988 to plaintiffs versus defendants comes from the idea that unlike defendants, plaintiffs are usually "'private attorney generals' who act to eradicate unlawful discrimination," *Baker v. City of Detroit*, 504 F. Supp. 841, 850 (E.D. Mich. 1980) (citing *Newman v. Piggie Park Enters., Inc.*, 390 U.S. 400 (1968)), and "the 'strong equitable considerations counseling an attorney's fee award to a prevailing [civil rights] plaintiff' may not be present when a defendant or an intervening defendant prevails in civil rights litigation." *King v. Illinois State Bd. of Elections*, 410 F.3d 404, 416 (7th Cir. 2005) (citing *Christiansburg Garment Co.*, 434 U.S. at 418). Courts occasionally have awarded attorney's fees under section 1988 to other successful parties, such as plaintiff-intervenors who have played

a significant role in the litigation, *see Shaw v. Hunt*, 154 F.3d 161, 164-66 (4th Cir. 1998); *Haslert v. Illinois State Bd. of Election Comm'rs*, 28 F.3d 1430, 1441 (7th Cir. 1993); *Wilder v. Bernstein*, 965 F.2d 1196, 1204 (2d Cir. 1992); *EEOC v. Strasburger, Price, Kelton, Martin & Unis*, 626 F.2d 1272, 1275-76 (5th Cir. 1980); *Grove v. Mead Sch. Dist. No. 354*, 753 F.2d 1528, 1535 (9th Cir. 1985) (establishing significant-role standard), or even defendant-intervenors if their position can be "more readily . . . analogized to that of a plaintiff," *King*, 410 F.3d at 414 n.10 (concluding, in the context of the Voting Rights Act, that it is "not realistic to view the intervenors as defendants opposing a civil rights claim" and "the intervenors' position can be analogized to that of co-plaintiffs asserting their own rights" because they sought to defend their own federally-protected voting rights); *Comm'r Ct. of Medina County v. United States*, 683 F.2d 435, 440 (D.C. Cir. 1982) (finding that individuals who intervened as defendants in a suit for declaratory relief brought by the Commissioners of a county seeking a declaration that the two redistricting plans they designed were not adopted in furtherance of a discriminatory purpose could be "prevailing parties" where their intervention prompted reworking of a redistricting plan that mooted concerns of the intervenors); *Baker*, 504 F. Supp. at 850-51 (concluding that the *Christiansburg Garment* rule did not apply where African-American police officers intervened in a reverse discrimination suit brought by the white police officers contending that the city's affirmative action program is unconstitutional because the intervenors could just as easily initiate their own suit).

In arguing that he should be viewed as a plaintiff, Russell relies primarily on *Baker v. Detroit*. In that case, white police officers filed a reverse discrimination lawsuit brought seeking to invalidate an affirmative action program adopted by the Detroit police department. African-American police officers intervened in support of the program on the ground that past discrimination

required it.  The court upheld the hiring program, and then granted the intervening defendants attorney's fees under section 1988, finding that "[t]he procedural posture of the case should not be dispositive.  The intervenors have vindicated their rights, and this Court believes it just and reasonable for the [plaintiff] to pay their attorney's fees."  504 F. Supp. at 851.  The court based its decision on the following reasoning:

> In the large majority of cases that party or parties seeking to enforce such (civil) rights will be the plaintiffs and/or plaintiff-intervenors.  However, in the procedural posture of some cases, the parties seeking to enforce such rights may be the defendants and/or intervenors.  *See e. g. Shelley v. Kramer*, 334 U.S. 1 (68 S. Ct. 836, 92 LED. 1161) (1948).

*Ibid.* (quoting S. Rep. No. 94-1011, 94th Cong.2d Sess. 4, n. 4, U.S. Code Cong. & Admin. News, 1976, pp. 5908, 5912 (1976)).  According to that rationale, in order to achieve prevailing plaintiff status, despite contrary alignment, the party seeking attorney's fees have been attempting to enforce federal constitutional rights.

Russell may fit the mold of a private attorney general, since he sought to nullify an injunction that extended the effective date of Proposal 2 when Michigan's attorney general had stipulated to that relief.  However, Russell was not attempting to seek redress for the "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws [of the United States]."  42 U.S.C. § 1983.  The application of section 1988 is limited to "action[s] or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986. . . ."  42 U.S.C. § 1988(b).  Instead, Russell was attempting (with the help of Proposal 2, a state law) to upset an admissions protocol that had been declared constitutional by the Supreme Court.  *See Grutter v. Bollinger*, 539 U.S. 306 (2003).  Russell was not attempting to enforce a federal constitutional right at all; he was resisting

– as defendant sometimes do – the plaintiffs' claims that the Constitution required the relief they sought.

The other cases cited by Russell – *King v. Illinois State Board of Elections*, 410 F.3d at 416, and *Donnell v. United States*, 682 F.2d 240 (D.C. Cir 1982) – arose in the context of the Voting Rights Act, where municipal authorities moved for a declaratory judgment affirming their respective proposed redistricting plans as constitutional and the defendant-intervenors contended that such plans violated their rights under the Act. These cases have a unique procedural posture, which is easily distinguishable from the case at hand.

The goal of section 1988 is "to reimburse with reasonable attorney's fees those who as 'private attorneys general' take it upon themselves to invoke and thereby invigorate the *federal constitutional and statutory rights*." *Geier v. Richardson*, 871 F.2d 1310, 1313 (6th Cir. 1989) (quoting *Charles v. Daley*, 846 F.2d 1057, 1063 (7th Cir. 1988)) (emphasis added). That goal is not advanced by an award of attorney's fees under prevailing plaintiff standards to a defendant-intervenor, who, like the other defendants in the case, opposed the plaintiffs' attempt to assert their federal constitutional rights. *See Geier*, 871 F.2d at 1314 (holding that the United States intervenor acted as a civil rights defendant bound by the *Christiansburg Garment* rule when it alleged that the desegregation consent decree reached between the original parties to the action was unconstitutional because it employed racial quotas that, according to the United States, operated to deprive non-minority students of equal protection).

Russell must be considered a defendant under the prevailing party rules.

D.

In *Christiansburg Garment Co. v. EEOC*, the Supreme Court held that "a district court may in its discretion award attorney's fees to a prevailing defendant in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." 434 U.S. at 421. That same standard applies to defendants seeking attorney's fees under section 1988. *Hughes v. Rowe*, 449 U.S. 5, 14 (1980) ("Although arguably a different standard might be applied in a civil rights action under 42 U.S.C. § 1983, we can perceive no reason for applying a less stringent standard."); *see also Pierzynowski v. Police Dep't City of Detroit*, 947 F. Supp. 1147, 1148 (E.D. Mich. 1996).

Russell cannot satisfy this standard. As the Supreme Court explained, "the term 'meritless' is to be understood as meaning groundless or without foundation, rather than simply that the plaintiff has ultimately lost his case." *Christiansburg Garment*, 434 U.S. at 421. Russell argues, however, that the university defendants and the attorney general agreed to a temporary injunction in the face of clear precedent that the ballot measure was constitutional, citing *Coalition for Economic Equity v. Wilson*, 122 F.3d 692 (9th Cir. 1997). That decision from another circuit hardly establishes a "universal rule" or a "well-accepted proposition." To the contrary, the plaintiffs in this case advanced a cogent and lucid argument based on Supreme Court precedent that Proposal 2 is unconstitutional. *See Hunter v. Erickson*, 393 U.S. 385 (1969); *Washington v. Seattle Sch. Dist. No. 1*, 458 U.S. 457 (1982); *Romer v. Evans*, 517 U.S. 620 (1996). Their argument, therefore, cannot be said to be "groundless" or "without foundation." The Sixth Circuit has yet to rule on the issue, even in the present case. And federal circuits have been known to reach opposite conclusions on legal questions. Nor was the plaintiffs' position based on "an indisputably meritless legal theory"

so as to be frivolous. *See Neitzke v. Williams*, 490 U.S. 319, 329-30 (1989) (interpreting "frivolous" within the meaning of the federal *in forma pauperis* statute, 28 U.S.C. § 1915).

Russell is not entitled to attorney's fees or costs under 42 U.S.C. § 1988 as a prevailing defendant.

### III.

The Court finds that intervening defendant Eric Russell's status as a prevailing party, based on his success in obtaining a stay in an appeal that ultimately was dismissed, to be dubious. If he is a prevailing party within the meaning of 42 U.S.C. § 1988(b), he must be viewed as a prevailing defendant. In that capacity, Russell has not established that he is entitled to attorney's fees or costs from any other party in this case.

Accordingly, it is **ORDERED** that the motion by intervening defendant Eric Russell for attorney's fees and costs [dkt #259] is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: June 17, 2010

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on June 17, 2010.

s/Teresa Scott-Feijoo
TERESA SCOTT-FEIJOO